IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID R. DESPOT,** | : | **CIVIL NO. 1:CV-08-0166** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| | : | |
| **v.** | : | |
| | : | |
| **KEYSTONE INSURERS GROUP,** | : | |
| **INC., DAVID E. BOEDKER,** | : | |
| **BOARD OF DIRECTORS OF** | : | |
| **KEYSTONE INSURERS GROUP,** | : | |
| **INC., DICKIE, MCCAMEY &** | : | |
| **CHILCOTE, P.C., and** | : | |
| **ROBERT W. HASTINGS,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff David R. Despot, proceeding *pro se*, is a former employee of Defendant Keystone Insurers Group, Inc. ("KIG"). Despot sues Keystone, its Board of Directors, its Chief Executive Officer David E. Boedker, its law firm, Dickie, McCamey & Chilcote, P.C. ("DMC"), and an attorney at DMC, Robert W. Hastings. There are thirty-six separate counts listed in Despot's complaint. Before the court is a motion to dismiss by DMC and Hastings ("Firm Defendants") and a motion for judgment on the pleadings by KIG, its Board, and its CEO ("Keystone Defendants"). For the reasons that follow, the motions will be granted as to all federal law claims. These claims will be dismissed with prejudice because of Despot's pattern of pleading and conduct in this and other federal lawsuits he has filed. The court will remand any remaining state claim to the Court of Common Pleas for Dauphin County, Pennsylvania.

**I.**          <u>Background</u>

     **A.**   <u>Facts</u>

         The following facts and reasonable inferences are taken from Despot's complaint and accepted as true for purposes of this motion. KIG is a property casualty insurer. (Compl. ¶ 7.) KIG "has over 100 partner agencies with over 130 locations in the states of Indiana, North Carolina, Pennsylvania, and Virginia." (*Id.*) Keystone Defendants operate out of corporate headquarters in Northumberland, Pennsylvania. (*Id.* ¶¶ 2-4.) The Firm Defendants maintain an office in Pittsburgh, Pennsylvania. (*Id.* ¶¶ 5-6.)

         Before June 15, 2005, Despot and Keystone engaged in negotiations for Despot to become a Vice President and Corporate Officer for KIG Financial Services, LLC. On that date, KIG issued an offer letter to Despot containing the compensation and benefits terms of his employment. (*Id.* Ex. 1.) The letter is attached to the complaint and its authenticity is not in dispute. The letter states that:

> [a]n executive employment contract will be developed for the period of 6/15/05–12/31/07 and executed within the next sixty (60) days. This contract will include non-piracy provisions with regard to employees, clients, intellectual properties, systems and process of KIG, its subsidiaries and franchises. These provisions are effective immediately upon employment in the form of an oral contract, and your acceptance of these and other provisions is indicated by your signature below.

(*Id.*) Despot's signature appears at the end of the letter and is dated June 15, 2005. (*Id.*) Despot first characterizes the letter as the employment contract between himself and KIG Financial Services. (Compl. ¶ 12.) Later in his complaint, Despot appears to acknowledge that the letter was not an employment contract. He states that "all Defendants" retaliated against him for actions described *infra* by "[f]ail[ing] to execute an executive employment contract with [him] for the period

6/15/05–12/31/07 in regards to the already established executive contractual employment with the Plaintiff serving as Vice-President & Corporate Officer for KIG Financial Services, LLC." (*Id.* ¶ 17(1).)

"[A]ll Defendants" terminated Despot's employment with KIG Financial Services on February 26, 2007. (*Id.* ¶ 13.) Boedker and Hastings were present at the termination meeting on that date; Hastings "actively participated" in the meeting. (*Id.* ¶ 14.) Firm Defendants "adversely influenced the decision" which led to Despot's termination. (*Id.*) The termination letter issued on that date, signed by Boedker, is attached to the complaint. (*Id.* Ex. 2.) Its authenticity is not in dispute.

Despot's umbrella claims are that he:

> was retaliated against by all Defendants and others for the Plaintiff not supporting and opposing insurance industry illegal activities. These insurance industry illegal activities involved both EEOC activities and events and also non-EEOC activities and events. The non-EEOC insurance industry illegal activities and events first surfaced during the Plaintiff's active employment and again at the February 26, 2007 termination meeting. . . . The EEOC insurance industry illegal activities and events first surfaced at the February 26, 2007 termination meeting and again with the April 12, 2007 memo.[1]

(Compl. ¶ 15.)

Despot lists the "illegal activities" in which KIG allegedly engaged and to which he voiced opposition to Boedker. (*Id.* ¶ 16.) These "illegal practices" 1) were anti-competitive; 2) prioritized Defendants' or the company's "financial interests and profits ahead of the best interests of customers;" 3) constituted

---

[1]    The April 12, 2007 memorandum to which Despot refers is attached to the complaint. It is a letter from Hastings, on DMC letterhead, informing Despot that all correspondence regarding his termination should be directed to Hastings as counsel for Keystone. (Compl. Ex. 4.) The authenticity of the memorandum is not in dispute.

securities fraud; or 4) otherwise adversely affected customers or shareholders. (*E.g.*, *id.*) Because of his opposition, "all Defendants" retaliated against him. The retaliatory actions taken were 1) failure to execute an employment contract between KIG and Despot for the period of June 15, 2005 through December 31, 2007; 2) threats not to execute a renewed employment contract for the period of January 1, 2008, through December 31, 2009, which renewed contract would have promoted Despot to President and CEO of KIG Financial Services and Keystone Benefit Services and provided to Despot a salary of $175,000 plus bonus (*id.* ¶ 17); and 3) defaming Despot's character by making false statements during Despot's unemployment compensation hearing before the Pennsylvania Department of Labor and Industry's Bureau of Unemployment Compensation Benefits and Allowances (*id.* ¶ 18; *see id.* Ex. 3).

   These are the only facts alleged in Despot's complaint.

   These facts demonstrate, according to Despot, that Defendants have violated the laws of four states and the United States. (Compl. ¶¶ 8-11.) He charges that all Defendants operate and transact business in Indiana. (*Id.* ¶ 8.) Further, all Defendants may have violated:

> the laws of the Indiana Courts, . . . the laws of the Indiana Department of Insurance, . . . the laws of the Securities Division of the Office of the Indiana Secretary of State, . . . the laws of the Indiana Civil Rights Commission, . . . the laws of Indiana Deceptive Trade Practices, . . . the laws of Indiana Consumer Protection, . . . the Indiana Whistleblower Laws, and . . . the Indiana Anti-Fraud Laws . . . .

(*Id.*) He claims that a complaint has been filed with the Indiana agency governing employment discrimination claims. (*Id.*) Despot does not allege that any of the actions taken against him occurred in Indiana.

All Defendants operate and transact business within North Carolina.

(*Id.* ¶ 9.)  All Defendants may have violated:

> the laws of the North Carolina Court System, . . . the laws of the North Carolina Department of Insurance, . . . the laws of the North Carolina Securities Division of the North Carolina Department of the Secretary of State, . . . the laws of the North Carolina Human Relations Commission, . . . the laws of North Carolina Unfair and Deceptive Trade Practices Act, . . . the laws of North Carolina Consumer Protection, . . . the North Carolina Whistleblower Laws, and . . .  the North Carolina Anti-Fraud Laws . . . .

(*Id.*)  He claims that a complaint has been filed with the North Carolina agency governing employment discrimination claims.  (*Id.*)  Despot does not allege that any of the actions taken against him occurred in North Carolina.

Similarly, all Defendants operate and transact business within Virginia and may have violated:

> the laws of the Virginia Courts, . . . the laws of the Virginia State Corporation Commission Bureau of Insurance, . . . the Virginia Division of Securities and Retail Franchising, . . . the laws of the Virginia Human Rights Council, . . . the laws of Virginia Deceptive Trade Practices, . . . the laws of the Virginia Consumer Protection Act, . . . the Virginia Whistleblower Laws, and . . . the Virginia Anti-Fraud Laws . . . .

(*Id.* ¶ 11.)  He claims that a complaint has been filed with the Virginia agency governing employment discrimination claims.  (*Id.*)  Despot does not allege that any of the actions taken against him occurred in Virginia.

Last, all Defendants operate and transact business within Pennsylvania and may have violated:

> the laws of the Pennsylvania Courts, . . . the laws of the Commonwealth of Pennsylvania Insurance Department, . . . the laws of the Pennsylvania Securities Commission, . . . the laws of the Pennsylvania Human Relations Commission, . . . the laws of Pennsylvania Unfair Trade Practices, . . . the laws of Pennsylvania Consumer Protection, . . . the Pennsylvania Whistleblower Laws, and . . . the Pennsylvania Anti-Fraud Laws . . . .

(*Id.* ¶ 10.)  He claims that a complaint has been filed with the Pennsylvania agency governing employment discrimination claims.  (*Id.*)

In addition to these state law claims, Despot charges that all Defendants may have violated:

> the laws of the Equal Employment Opportunity Commission, . . . the laws of the National Association of Insurance Commissioners, . . . the laws of the U.S. Securities and Exchange Commission, . . . the laws of the Financial Industry Regulatory Authority (consolidation of NASD and the member regulation and enforcement and arbitration functions of the New York Stock Exchange), . . . the Federal Whistleblower Protection Laws, . . . the Federal Antitrust Laws, and . . . the Racketeer Influenced and Corrupt Organizations Act (RICO), and etc.

(*Id.* ¶¶ 8-11.)  For Despot's federal discrimination law claim or claims, a complaint has been filed with the United States Equal Employment Opportunity Commission ("EEOC").  (*Id.*)

The remainder of Despot's complaint is a list of thirty-six "counts" stated against all Defendants.  The counts of the complaint are labeled, by Despot, as:  1) "Non-EEOC Retaliation Against Plaintiff for Not Supporting and Opposing non-EEOC Insurance Industry Illegal Activities;" 2) "Aiding And Abetting Breach Of Fiduciary Duties;" 3) "Anti-competitive Conduct;" 4) "Anti-fraud Violations;" 5) "Anti-trust Violations;" 6) "Breach of Agreement;" 7) "Breach of Contract;" 8) "Breach of Duty of Care;" 9) "Breach of Duty of Loyalty And Good Faith;" 10) "Breach of Fiduciary Duties;" 11) "Collusion;" 12) "Conflicts of Interest Violations;" 13) "Deceit;" 14) "Deceptive Trade Practice Violations;" 15) "Defamation—Libel;" 16) "Defamation—Slander;" 17) "Disclosure Failure;" 18) "Fiduciary Duty to Customer Violations;" 19) "Fraud;" 20) "Fraudulent Business Practice;" 21) "Fraudulent Inducement;" 22) "Illegal Insurance Practices;" 23) "Infliction of Mental and Emotional Distress;" 24) "Intentional Misconduct;" 25)

"Intentional Misrepresentation;" 26) "Market Manipulation;" 27)

"Misrepresentation;" 28) "Negligence;" 29) "Negligent Misrepresentation;" 30)

"Racketeer Influenced and Corrupt Organization (RICO) Act Violations;" 31)

"Securities Violations;" 32) "Tortious Interference With Contract;" 33) "Tortious

Interference With Prospective Business Relationship;" 34) "Unjust Enrichment;" 35)

"Willful and Reckless Conduct;" and 36) "Other Relative Civil Wrongs As May

Deem Just and Proper." (*See generally* Compl.)  The substance of each count is

identical: "Paragraphs 1 through 19 [the facts as stated *supra*] and paragraph 56 [the

prayer for relief] are incorporated herein by reference as though set forth at length."

(*E.g.*, *id.* ¶ 20.)

## B.    Procedural History

This action was originally filed in the Court of Common Pleas for

Dauphin County, Pennsylvania.  (Doc. 1.)  Defendants removed the case to this

court on January 25, 2008.  (*Id.*)  On April 7, 2008, four additional civil actions were

consolidated into this case.[2]  (Doc. 14.)  On April 16, 2008, the Firm Defendants

filed a motion to dismiss the complaint.  (Doc. 20.)  On May 12, 2008, the Keystone

Defendants filed a motion for judgment on the pleadings.  (Doc. 30.)  Briefing is

complete on both motions and they are ripe for disposition.[3]

---

[2]  Case No. 08-533 began in the Southern District of Ohio; No. 08-577 originated in Indiana state court and was removed to the Southern District of Indiana; No. 08-601 commenced in Virginia state court and was removed to the Eastern District of Virginia; and No. 08-609 was filed in North Carolina state court and removed to the Eastern District of North Carolina.  After each state court case was removed to its respective federal district court, it was transferred to the Middle District of Pennsylvania.  The complaint in each of these cases is identical to the complaint filed in the lead case discussed herein, No. 08-166.

[3]  The standard for evaluating a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion under Rule 12(b)(6).  Accordingly, the court will discuss the issues raised

(continued...)

**II.**         <u>**Legal Standard:  Motion to Dismiss**</u>

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2).  *Id.* at 1965; *accord, e.g., Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).  A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).  The court is not, however, "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation."  *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quotations and citations omitted).  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is

---

[3](...continued)
in both motions under the Rule 12(b)(6) paradigm and refer to the Firm Defendants' arguments.

"plausible on its face," a complaint will survive a motion to dismiss. *Bell Atlantic Corp.*, 127 S. Ct. at 1965, 1974; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234-35 (3d Cir. 2007).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Id.* Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as for what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci,* 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to

less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), *quoted in Erickson*, 127 S. Ct. at 2200.

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a complaint that is merely deficient. *See, e.g.*, *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.      Discussion

Firm Defendants move to dismiss every count of Despot's complaint for failure to state a claim, and support their motion with a thorough brief that cites appropriate law and applies it to the facts that must be accepted as true. Despot responds to their arguments by stating that:

> Contrary to [arguments made in Firm Defendants' brief in support of their motion to dismiss,] the Plaintiff does state claims upon which relief may be granted and facts in support thereof; therefore the [complaint] and associated documents are incorporated herin [*sic*] this paragraph and this Document by reference as though set forth at length.

(*E.g.*, Doc. 32 ¶ 2; *see also* Doc. 37 ¶ 2.) Despot does not elaborate, nor does he cite to law in support of this statement.

### A.      Initial Matters

The court is cognizant that it must construe this *pro se* complaint liberally. *See Erickson*, 127 S. Ct. at 2200. Even with the most generous read, however, Despot's complaint suffers serious deficiencies.

### 1.   **Pleading Standards**

As an initial matter, neither Despot's lists of statutes and regulatory bodies nor his thirty-six "counts" suffice to state a claim against Defendants under any law.  At the risk of repeating the standard set forth above, a plaintiff must state *facts* in his complaint, not legal "labels and conclusions," to withstand a motion to dismiss.  *Twombly*, 127 S. Ct. at 1965.  Thus, the court will not discuss each of the labels that Despot has typed into the text of his complaint.  Instead, the court will look to the facts he alleges in ¶¶ 1-19 to determine whether, therein, he states any claim for which relief can be granted.

### 2.   **Standing**

Those facts suggest that Despot is attempting to vindicate certain injuries that may have accrued to others, but not to him.  For example, he claims that actions by some or all Defendants harmed customers, shareholders, or other businesses.  Despot does not allege, however, that *he* is a customer, shareholder, or owner of an injured business.  This failure of pleading leaves him without standing to sue.  The Supreme Court, in *Lujan v. Defenders of Wildlife*, set forth three requirements for constitutional standing in the federal courts.  This brief discussion need only address the first: that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  504 U.S. 555, 560 (1992) (quotations and citations omitted); *accord Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 160-61 (3d Cir. 2007).  "Particularized" means that "the injury must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  Despot has not stated facts suggesting that he has a legally protected

interest directly affected by the alleged actions that were anti-competitive or harmful to customers or shareholders. Accordingly, any federal law claim based on injury to someone other than Despot will be dismissed without further discussion.

Further, Despot claims that Defendants violated "Federal Whistleblower Protection Laws." (Compl. ¶¶ 8-11.) There are numerous federal statutes that protect whistleblowers from retaliation. A conclusory attempt to invoke one or more of them with a single phrase does not confer standing upon Despot to sue under these laws.[4] The court notes that the federal whistleblower laws are, largely, meant to protect *government* employees from retaliation for speaking out about government waste or fraud being perpetrated upon the government. *E.g.*, 31 U.S.C. § 3730(h) (False Claims Act prohibits retaliation against federal employees for actions taken pursuant to the Act). Despot's allegations demonstrate that he was the employee of a non-governmental entity.

### 3.   <u>Statement of the Claims that May Remain</u>

These initial matters lead the court to the conclusion that, drawing every inference on his behalf, the facts suggest that Despot might have standing to bring, and may be attempting to state a claim for: 1) employment discrimination under federal and state law; 2) retaliation under state whistleblower laws for speaking out about illegal practices of a non-governmental employer; 3) breach of contract under state law; and 4) defamation under state law. The sole claim providing this court with original jurisdiction, under this court's reading of the complaint, is that of federal employment discrimination. *See* 28 U.S.C. § 1331. All

---

[4] Nor is it sufficient to put Defendants on notice of the claim or claims against which they must defend.

12

remaining state law claims are subject to supplemental jurisdiction.[5]  *See* 28 U.S.C.
§ 1367.

    **B.    "EEOC Activities"**

        Despot asserts that all Defendants participated in "EEOC activities"
that were illegal.  Giving this allegation the required liberal read, the court construes
Despot's pleading to allege that some or all Defendants engaged in employment
discrimination against him, in violation of one or more of the anti-discrimination
statutes enforced by the EEOC.  This claim fails for at least two reasons.  First,
Despot does not allege that he was discriminated against because of his race, color,
religion, sex, national origin, *see* 42 U.S.C. § 2000e-2(a); age, *see* 29 U.S.C. §
623(a); or disability, *see* 42 U.S.C. § 12112(a).  Nor does he allege that his employer
retaliated against him in violation of any of the listed statutes.  These are the only
cognizable federal employment discrimination claims.  Because he does not allege
that he was discriminated against because of membership in a protected group, this
claim will be dismissed.

        Second, prior to bringing an employment discrimination suit in federal
court, a plaintiff must exhaust administrative remedies with the EEOC.  *Burgh v.
Borough Council of Montrose*, 251 F.3d 465, 469-77 (3d Cir. 2001); *see Fed.
Express Corp. v. Holowecki*, — U.S. —, 128 S. Ct. 1147, 1153 (2008).  The Third
Circuit has held that "[a] complaint does not state a claim upon which relief may be
granted unless it asserts the satisfaction of the precondition to suit specified by Title
VII: prior submission of the claim to the EEOC (or a state conciliation agency) for
conciliation or resolution."  *Hornsby v. U.S. Postal Serv.*, 787 F.2d 87, 90 (3d Cir.

---

        [5]  Despot does not allege the prerequisites for diversity jurisdiction.  *See* 28 U.S.C. 1332(a).

1986); *accord Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).  Not only must the administrative process have begun with submission of the claim, the process must be complete.  *Burgh*, 251 F.3d at 470; *accord Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 115 n.14 (3d Cir. 2003).  Here, Despot alleges that he has filed complaints with the EEOC and the appropriate state agency, but there is no allegation that the administrative process is exhausted.  While it is true that failure to exhaust is an affirmative defense, *see Robinson*, 107 F.3d at 1021, the face of the complaint shows that Despot may not prevail on his employment discrimination claim.  Despot's "EEOC activities" claim will be dismissed.

### C.    Federal Claims Dismissed Without Leave to Amend

Ordinarily, legally insufficient claims will be dismissed without prejudice and with leave to amend a complaint.  Federal Rule of Civil Procedure 15(a) states that the court "should freely give leave [to amend] when justice so requires."  A court's decision to deny leave to amend may be based upon "undue delay, bad faith, dilatory motive, prejudice, and futility."  *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).  Further, a district court acts within its discretion to deny leave to amend "where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."  *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002).  In the ordinary case, a plaintiff is put on notice of the deficiencies in his complaint when a defendant moves to dismiss. *See id.* at 144-45.  The judicial opinion and order granting the motion highlights the reasons for the deficiencies in the complaint and provides a roadmap to successful amendment.  *See Ca. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 163-

14

64 (3d Cir. 2004).  Thus, the plaintiff is on notice of the reasons his claims are deficient.  *See Krantz*, 305 F.3d at 144.  A plaintiff may be given leave to amend two or three times, or more, if he does attempt to correct the deficiencies in his complaint.  *See Chubb Corp.*, 394 F.3d at 163-65.  When a plaintiff chooses to ignore instruction from the court, he does so at his own peril; his deficient claims will be dismissed with prejudice.  *See id.* at 165.

Typically this cycle of pleading and amendment occurs within a single case.  *Id.* at 163-65; *Krantz*, 305 F.3d at 144.  Here, the court addresses the first complaint filed in the captioned matter.  Ordinarily, the court would issue an order dismissing the original complaint and granting leave to amend.  The federal claims in the instant complaint, however, will be dismissed with prejudice.  This course of action is appropriate because Despot was on notice of the deficiencies highlighted herein, courtesy of the federal courts in which his lawsuits have been adjudicated in the past.  *See Despot v. Ohio Nat'l Fin. Servs. Inc.*, No. 1:06cv193, 2007 WL 1026368, at *2 (S.D. Ohio Mar. 30, 2007); *Despot v. Combined Ins. Co. of Am.*, No. 03 C 7130, 2004 WL 1088361, at *1 (N.D. Ill. May 12, 2004); *Despot v. Bankers Life & Cas. Co.*, No. 4:03-CV-0931 (hereinafter "*Bankers Life*") (M.D. Pa. June 4, 2003 (filed)); *Despot v. Physicians Mut. Ins. Co.*, No. 4:03-cv-0751-MM (hereinafter "*Physicians Mutual*") (M.D. Pa. May 6, 2003 (filed)).

The court indulges in the following discussion of four of these prior cases to illustrate the reason for its decision to dismiss, with prejudice, Despot's claims under federal law.

1.    <u>**Despot's Prior Suits**</u>

a.    <u>***Despot v. Physicians Mutual Insurance Company***</u>

On April 10, 2003, Despot filed a 165-page complaint in the Court of Common Pleas for Centre County, Pennsylvania. *Physicians Mutual*, Doc. 1 Ex. A (M.D. Pa. May 6, 2003).  The complaint set forth twenty-six counts against his former employer, Physicians Mutual Insurance Company ("PMI").  The counts, as labeled by Despot, were: 1) breach of agreement; 2) breach of confidentiality; 3) breach of contract; 4) conflict of interest; 5) defamation (libel); 6) defamation (slander); 7) disclosure failure; 8) discrimination; 9) duress; 10) fraud; 11) harassment; 12) intentional infliction of emotional distress; 13) intentional disregard of contract provisions; 14) intentional misconduct; 15) interference with business relations; 16) interference with contractual relations; 17) misrepresentation; 18) negligence; 19) nonperformance of contract; 20) retaliation; 21) retaliation discrimination; 22) trespass; 23) unfair competition; 24) whistleblower; 25) wrongful discharge/termination; and 26) other relative civil wrongs as may deem just and proper. *Id.*

On May 6, 2003, PMI removed the action to the Middle District of Pennsylvania. *Id.* Doc. 1.  After discovery, during which Despot had to be compelled by court order to abide by the Federal Rules of Civil Procedure, *see id.* Doc. 18 (Dec. 3, 2003), PMI moved for summary judgment.  The majority of Despot's claims were untimely, and summary judgment was granted accordingly. Among the other issues addressed by the court were 1) Despot's age discrimination claim and 2) the claims pleaded by Despot that were not recognized causes of action. *Id.* Doc. 31 at 9 (June 21, 2004).  With respect to his age discrimination claim, the

court noted that summary judgment was granted for failure to exhaust administrative remedies. *Id.* The court entered judgment as to 1) breach of confidentiality; 2) conflict of interest; 3) disclosure failure; 4) duress; 5) harassment; 6) intentional disregard of contractual provisions; 7) intentional misconduct; 8) nonperformance of contract; and 9) other civil wrongs as may deem just and proper. *Id.* at 9-10. The court explained that these purported "causes of action" are not recognized in law. *Id.* The case was ordered closed.

### b.   *Despot v. Bankers Life & Casualty Company*

In June 2003, Despot filed a thirty-seven page complaint consisting of twenty-seven counts against Bankers Life and Casualty Company, his former employer, and an officer of that company. *Bankers Life*, Doc. 1. (M.D. Pa. June 4, 2003). The twenty-seven counts, as labeled by Despot, were: 1) breach of agreement; 2) breach of confidentiality; 3) breach of contract; 4) conflict of interest; 5) defamation (libel); 6) defamation (slander); 7) disclosure failure; 8) discrimination (family status); 9) discrimination (gender/sex); 10) discrimination (marital status); 11) duress; 12) fraud; 13) harassment; 14) infliction of mental and emotional distress; 15) intentional disregard of contractual provisions; 16) intentional misconduct; 17) interference with business relations; 18) interference with contractual relations; 19) invasion of privacy; 20) misrepresentation; 21) negligence; 22) nonperformance of contract; 23) retaliation; 24) retaliation discrimination; 25) trespass; 26) wrongful discharge/termination; and 27) other relative civil and contract wrongs as may deem just and proper. *Id.* The defendants filed a motion to dismiss for failure to state a claim. The court granted the motion. Specifically, the court noted that:

> The factual allegations upon which Despot bases all of his claims are set forth in the first 33 paragraphs of his complaint. In the remainder of his complaint, Despot merely lists in summary fashion his causes of action, legal conclusions, and the damages he seeks in connection with each claim. Despot has made no attempt to plead the individual elements of his claims, and he has failed to allege any claim with sufficient factual specificity.

*Id.* Doc. 11 at 4 (Sept. 26, 2003). Despot was granted leave to amend his complaint. *Id.*

Despot's first amended complaint was 176 pages, but stated the same counts as his original complaint. *Id.* Doc. 12 (Oct. 27, 2003). Again, the defendants moved to dismiss. The court, in granting the motion, observed that:

> The differences between Despot's initial and amended complaints are inconsequential; each document is essentially an extended narrative of events which does not state any claim for relief upon which relief may be granted. All of the deficiencies in Despot's original complaint . . . remain in Despot's amended complaint. The most basic shortcomings are Despot's failure to plead sufficient facts to 1) state any cause of action, or 2) provide the Defendants with adequate notice of the precise nature of the claims.

*Id.* Doc. 20 at 3 (Jan. 22, 2004). The court added that it "seriously considered dismissing this case with prejudice for Despot's blatant failure to comply with the Federal Rules of Civil Procedure" and the court's prior order dismissing his first complaint. *Id.* Because he was proceeding *pro se*, however, Despot was given leave to amend one last time. *Id.* at 3-4.

Despot then filed a 134-page second amended complaint with the same causes of action as his original and first amended complaints. *Id.* Doc. 21 (Feb. 11, 2004). For a third time, the defendants moved to dismiss his claims. The motion was granted, with prejudice, as to twenty-six of Despot's twenty-seven claims. *Id.* Doc. 29 at 32 (May 24, 2004). The claim that survived was his gender discrimination claim. *Id.* Despot had pled that "[a]s a male, [he] was treated

differently and less favorably." *Id.* Doc. 21 at 37 (Feb. 11, 2004). Certain other of Despot's claims were dismissed because he had failed to plead the prerequisites to relief or because a claim was "comprised of merely a collection of legal conclusions thinly disguised as factual allegations." *Id.* Doc. 29 at 24 (May 24, 2004).

After discovery, during which Despot had to be compelled by court order to follow the Federal Rules of Civil Procedure, *see id.* Doc. 43 (Mar. 25, 2005), the remaining defendant moved for summary judgment. The issue was whether Despot had exhausted his administrative remedies with respect to his claim for gender discrimination. *Id.* Doc. 72 at 7 (Aug. 9, 2005). The court described the process by which Despot attempted administrative resolution of his claim, then compared it to the requirements for complete exhaustion of any such claim. *Id.* at 7-11. The court described in detail, but in language understandable to a layperson, that exhaustion is required before a federal court may evaluate the merits of an employment discrimination claim. Upon the conclusion that the factual record did not demonstrate that Despot had exhausted his employment discrimination claim, the court dismissed the count without prejudice to Despot's ability to bring suit on the claim again after proper exhaustion. *Id.* at 12-13. The case was then closed.

### c. *Despot v. Combined Insurance Company of America*

On October 8, 2003, Despot filed a twenty-nine count complaint against his former employer and two individuals in the Northern District of Illinois. *Despot v. Combined Ins. Co. of Am.*, No. 03 C 7130, 2004 WL 1088361, at *1 (N.D. Ill. May 12, 2004). He claimed relief for discrimination based on family status, gender, sex, and marital status; hostile work environment; retaliation under anti-discrimination laws; defamation; slander; invasion of privacy; breach of contract;

19

interference with contract; interference with business relations; fraud; misrepresentation; failure to disclose; emotional distress; negligence; trespass; breach of confidentiality; conflict of interest; intentional misconduct; duress; and other civil wrongs as may deem just and appropriate. *Id.* at *1-3. The defendants moved to dismiss.

The Northern District of Illinois dismissed all of Despot's claims except his claims of fraud, misrepresentation, and failure to disclose. *Id.* With respect to his employment discrimination claims, the court noted that Despot had not alleged that he filed charges with either the EEOC or the Illinois Human Rights Department within the required time. *Id.* at *1. Not having begun the administrative process, it follows that he failed to exhaust it. With respect to most other claims, the court held that Despot failed to plead facts that would support an element of the cause of action. Last, the court found that his claims for breach of confidentiality, conflict of interest, intentional misconduct, duress, and other civil wrongs as may deem just and appropriate were not causes of action under Illinois law. *Id.* at *3.

### d. ***Despot v. Ohio National Financial Services, Inc.***

Despot filed a civil complaint in the Southern District of Ohio on April 5, 2006. *Despot v. Ohio Nat'l Fin. Servs. Inc.*, No. 1:06cv193, 2007 WL 1026368, at *2 (S.D. Ohio Mar. 30, 2007). He alleged ten causes of action against seven defendants, including his former employer. *Id.* On May 18, 2006, he filed an identical complaint in the Court of Common Pleas for Hamilton County, Ohio. *Id.* The state court granted the defendants' motion to dismiss soon thereafter, with prejudice and as to all defendants. *Id.* In federal court, the defendants were granted summary judgment on the basis of *res judicata*. *Id.*

## 2.   <u>Applicability to the Instant Case</u>

The foregoing demonstrates Despot's pattern of filing conclusory complaints against former or prospective employers, a pattern replicated here.  He routinely neglects the rules of pleading and procedure.  He ignores judicial opinions informing him of the deficiencies of his claims.  He uses labels to signify his causes of actions, instead of stating facts in support thereof.  Some of his labels, he has been instructed, simply are not legal injuries.  In this case, again, Despot engages in shotgun pleading that is totally insufficient under the Federal Rules of Civil Procedure and all precedent.  Further, the sole federal employment discrimination claim attempted in this matter fails for two reasons, as described *supra*.  It is evident from Despot's past litigation that he was well aware that pleading such a claim required a statement of membership in a protected class and a pleading of administrative exhaustion.  He was on notice that failure to allege these elements would render his complaint fatally flawed.

Additionally, Despot initiated this action by filing five separate law suits, each in a different state, all against the same Defendants, and all begun with an identical complaint.  Three of the suits began in state court, requiring removal to the appropriate federal district court, then a transfer to this court in the interests of efficiency, uniformity, and the preservation of resources.  He was on notice after *Ohio National Financial Services* that one court, and only one court, was necessary and appropriate to hear his claims.  Here, he taxed the resources of five.

There is no call for this court to permit Despot to amend his complaint. He was on notice of the deficiencies contained therein, but filed it anyway.  In light

of his past experience in federal court, his *pro se* status does not save his complaint. Despot's federal claims, as addressed above, will be dismissed with prejudice.

### D.   State Law Claims

Despot's attempted federal claims were the only claims providing this court with original jurisdiction.  *See* 28 U.S.C. § 1331.  Because those claims will be dismissed with prejudice, this court declines to exercise supplemental jurisdiction over any remaining state law claim.  *See* 28 U.S.C. § 1367(c)(3).

Although this court is reluctant to subject another court to the complaint in this case, this suit will be remanded to the Court of Common Pleas for Dauphin County, Pennsylvania, under 28 U.S.C. § 1447(c).  The only events alleged to have affected Despot occurred in Pennsylvania.  The Pennsylvania court is best equipped to determine whether Despot has sufficiently alleged a violation of the laws of the Commonwealth.

## IV.   Conclusion

All of Despot's attempts to state claims under federal law will be dismissed with prejudice.  This case will be remanded to the Court of Common Pleas for Dauphin County, Pennsylvania, for adjudication of any remaining state law claim.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  August 13, 2008.

22

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**DAVID R. DESPOT,**                          :       **CIVIL NO. 1:CV-08-0166**
                                             :
    **Plaintiff**                          :       **JUDGE SYLVIA H. RAMBO**
                                             :
    **v.**                                :
                                             :
**KEYSTONE INSURERS GROUP,**                  :
**INC., DAVID E. BOEDKER,**                   :
**BOARD OF DIRECTORS OF**                     :
**KEYSTONE INSURERS GROUP,**                  :
**INC., DICKIE, MCCAMEY &**                   :
**CHILCOTE, P.C., and**                       :
**ROBERT W. HASTINGS,**                       :
                                             :
    **Defendants**                        :

# O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT** the motion to dismiss filed by Defendants Dickie, McCamey & Chilcote, P.C., and Robert W. Hastings (Doc. 20) and the motion for judgment on the pleadings filed by Defendants Keystone Insurers Group, Inc., David E. Boedker, and Board of Directors of Keystone Insurers Group, Inc. (Doc. 30) are **GRANTED** in part and **DENIED** in part as follows:

    1) The motions are **GRANTED** as to any federal law claim stated in the complaint.  All federal law claims are **DISMISSED WITH PREJUDICE**.

    2) The motions are **DENIED** as to any state law claim stated in the complaint.  All state law claims will be **REMANDED** to the Court of Common Pleas for Dauphin County, Pennsylvania.

    3) The Clerk of court shall close this case.

                    s/Sylvia H. Rambo
                    SYLVIA H. RAMBO
                    United States District Judge

Dated:  August 13, 2008.